**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOCKTON PARTNERS, LLC,<br>Plaintiff,<br>-against-<br>STONE POINT CAPITAL LLC,<br>Defendant. | Case No. 25-mc-00102<br><br>Hon. John P. Cronan |

# PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL


GIBSON, DUNN & CRUTCHER LLP
Lauren R. Goldman
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
LGoldman@gibsondunn.com

Russell H. Falconer (*pro hac vice*)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3170
Email: RFalconer@gibsondunn.com

RILEY SAFER HOLMES & CANCILA LLP
Eli Litoff (*pro hac vice forthcoming*)
One South Dearborn St., Suite 2200
Chicago, IL 60603
Telephone: (312) 471-8780
elitoff@rshc-law.com

*Attorneys for Plaintiff Lockton Partners, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 1
I. Documents Related to the Leveraged Hire Strategy. .......... 1
A. The Documents Are Relevant. .......... 1
B. Stone Point Fails to Establish Undue Burden. .......... 5
II. Documents Related to Lockton's Confidential Information. .......... 8
III. Stone Point's Privilege Log. .......... 9
IV. Stone Point's Requests for Delay and Cost Shifting Should be Denied. .......... 10
CONCLUSION .......... 11

# TABLE OF AUTHORITIES

## Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
300 F.R.D. 406 (C.D. Cal. 2014) ........ 8

*Amphenol Corp. v. Fractus, S.A.*,
2019 WL 2521300 (S.D.N.Y. June 19, 2019) ........ 5, 6

*Athalonz, LLC v. Under Armour, Inc.*,
2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024) ........ 8

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*,
2017 WL 9401102 (S.D.N.Y. Mar. 2, 2017) ........ 8

*In re Cnty. of Orange*,
208 B.R. 117 (Bankr. S.D.N.Y. 1997) ........ 5

*Kirschner v. Klemons*,
2005 WL 1214330 (S.D.N.Y. May 19, 2005) ........ 6

*Nalco Co. v. Turner Designs, Inc.*,
2014 WL 1311571 (N.D. Cal. Mar. 31, 2014) ........ 8

*Nicholas v. Poughkeepsie Sav. Bank/FSB*,
1991 WL 113279 (S.D.N.Y. June 14, 1991) ........ 8

*Patterson Dental Supply v. Pace*,
2020 WL 10223625 (D. Minn. Jun. 17, 2020) ........ 3

*Rollstock, Inc. v. SupplyOne, Inc.*,
2022 WL 1443389 (E.D. Pa. May 6, 2022) ........ 8

*Saller v. QVC, Inc.*,
2016 WL 8716270 (E.D. Pa. June 24, 2016) ........ 8

*Smarte Carte, Inc. v. Innovative Vending Sols., LLC*,
2024 WL 4024904 (D.N.J. Feb. 28, 2024) ........ 8

*In re Subpoena to Apple Inc.*,
2014 WL 2798863 (N.D. Cal. June 19, 2014) ........ 8

*In re Subpoena to Loeb & Loeb LLP*,
2019 WL 2428704 (S.D.N.Y. June 11, 2019) ........ 5, 10

*In re: Subpoena to Stone Point Capital, LLC*,
2022 WL 3754816 (Conn. Super. Ct. Aug. 30, 2022) ........ 4, 5

*Thomas v. New York City Health & Hosp. Corp.*,
2005 WL 3070901 (S.D.N.Y. Nov. 12, 2005) ........ 9

## INTRODUCTION

Stone Point's opposition fails to grapple with the crux of Lockton's motion. Stone Point doesn't refute that Lockton seeks documents that go to the heart of its case against Alliant. And based on its misguided belief that the documents are irrelevant, Stone Point shirks its burden to establish that Lockton's requests are unduly burdensome, instead arguing that Stone Point should not have to incur *any* burden whatsoever.

Stone Point's contention that it "has bent over backwards trying to resolve this dispute amicably," Dkt. 22 at 2, is belied by the record. Stone Point didn't meaningfully engage in discussions about search terms, date ranges, and custodians until Lockton sought court intervention. Even then, as Lockton continued its efforts to resolve the dispute, those efforts were met with Stone Point's bad faith and obstruction. Indeed, in its most recent correspondence, Lockton acceded to ***each and every one of Stone Point's demands*** to resolve the dispute—a narrowed date range, an agreement that Stone Point need not reproduce documents produced by Alliant, modified search terms, and more—only for Stone Point to back out of the agreement and demand an even narrower date range, cutting off three years' worth of relevant documents. *See* Falconer Decl. ISO Reply, Ex. A. This confirms that Stone Point isn't taking a principled approach to its discovery obligations. It simply wants to avoid producing responsive documents at all costs.

This motion does not present a close question. The Court should compel Stone Point to comply with the subpoena Stone Point has been avoiding for nearly a year.

## ARGUMENT

### I. Documents Related to the Leveraged Hire Strategy.

#### A. The Documents Are Relevant.

As explained in Lockton's motion, documents related to Alliant's leveraged hire strategy are critical to Lockton's claims in the Missouri Action, regardless of whether they specifically

reference Lockton or the Individual Defendants. Dkt. 9 at 12-14. The evidence of Alliant's decade-long scheme—*i.e.*, its plan, pattern, practice, and modus operandi—establishes that what happened to Lockton here was not a mistake or a one-off incident. Alliant intended the Individual Defendants to breach their contracts with Lockton by soliciting customers and colleagues and misappropriating confidential information, and Alliant knowingly aided that wrongful conduct.

Stone Point makes a half-hearted effort to dispute relevance. It contends that documents generated years before the Missouri raid, and about other employees, companies, and geographic regions, are "completely untethered to the allegations in Lockton's complaint." Dkt. 22 at 11. This ignores that Lockton's complaint is not limited to the Missouri raid. It alleges a decade-long pattern of conduct, *see* Dkt. 9 at 3-9, and that "Alliant's raid of Lockton in this case followed Alliant's well-established pattern to a tee," *id.* at 7. Alliant's *scheme*—i.e. the leveraged hire strategy—is at the center of this case, not just Alliant's latest execution of that scheme.

The most basic example shows why Stone Point's argument is untenable: Suppose a presentation is given to Alliant's Board of Directors, which includes two Stone Point employees. Suppose the presentation is titled: "National Strategy to Disrupt Competitors – Our Leveraged Hiring Strategy," and that it details a plan to induce top producers from other companies to violate their restrictive covenants by rewarding them with huge signing bonuses at Alliant. Obviously, such a presentation would be the proverbial "smoking gun" in Lockton's case against Alliant. But Stone Point would have the Court believe that this document shouldn't be produced because it doesn't explicitly mention the Individual Defendants. There are plenty of additional examples. Suppose the Stone Point employees who reviewed the presentation ran the numbers, agreed that Alliant should proceed with the strategy because the benefits outweigh the costs, and communicated those recommendations to Alliant (indeed, that is exactly what Lockton's

complaint alleges). Stone Point would have the Court believe these documents are irrelevant, too. These examples demonstrate that Stone Point's position is unsupportable and should be rejected.

Stone Point's cited cases are not to the contrary. In *Frazier v. Morgan Stanley & Co.*, a disparate treatment case, the court narrowed nationwide discovery requests to "plaintiff's employment department or unit" where allegations "focused on a particular employment action in which decision-making was limited to that plaintiff's employment unit." 2021 WL 2709250, at *3 (S.D.N.Y. July 1, 2021) (cleaned up). The court also held that any company-wide policies and guidance "potentially considered" by the plaintiffs' supervisors *should* be produced. *Id.* In stark contrast to *Frazier*, Lockton's allegations don't involve decision-making at the business-unit or department level. Rather, the individuals who executed the raid in this case run Alliant. Peter Arkley, Alliant's President of National Retail Brokerage and member of Alliant's Executive Management Committee, led the charge. Thomas Corbett, the Chairman of Alliant's Board of Directors, interviewed and recruited multiple Individual Defendants. Peter Carpenter, Alliant's COO, gave final approval. And *these very same individuals* are the ones who direct the leveraged hire strategy. Dkt. 9 at 6. In other words, applying *Frazier*'s reasoning, materials related to the leveraged hire strategy should be produced because those materials would have been considered by the relevant decision-makers here.

Stone Point's reliance on *Patterson Dental Supply v. Pace*, 2020 WL 10223625, at *22-25 (D. Minn. Jun. 17, 2020), is also misplaced. There, the discovery sought was not relevant to the plaintiff's claims against its former employee and her new employer. *Id.* For example, the plaintiff sought all the former employee's communications with any of the defendant company's customers, regardless of whether those customers had anything to do with the plaintiff's business or confidential information. *Id.* at *24. That is a far cry from Lockton's requests for documents about

a strategy utilized to steal Lockton's business, personnel, and confidential information. Information about the development, analysis, tracking, and implementation of the strategy goes to the heart of Lockton's claims.

The Court also should reject Stone Point's effort to brush aside the Connecticut Superior Court's decision compelling production of the very same documents Lockton seeks here. *See* Dkt. 22 at 12-13 (citing *Arthur J. Gallagher & Co., In re: Subpoena to Stone Point Capital, LLC*, 2022 WL 3754816 (Conn. Super. Ct. Aug. 30, 2022)). Stone Point emphasizes that the Connecticut court's order was not issued until after the court in which the action was pending compelled Alliant to produce the leveraged hire materials, and no such order exists here. *Id.* at 12. That's irrelevant. The court in the Missouri Action did not have to compel Alliant's production in this case because Alliant agreed to make a voluntarily production. *See* Dkt. 21-1, Ex. 1 to Celluci Decl. Moreover, Alliant's agreement to produce the documents came after a discovery conference in which the Missouri court "indicated Lockton was entitled to documents concerning Alliant's national leveraged hiring strategy" and "suggested that 2020 seemed to be a reasonable starting point." *Id.* (November 1, 2024 3:59 PM email).

Stone Point also asserts that the Connecticut court "did not make an express relevancy determination," Dkt. 22 at 12, but courts don't compel productions without finding relevance. And the court's order was clear: "because the Texas litigation is but one instance of a pattern of conduct, involving application of a claimed business strategy that applies not only to the specifics of the Texas litigation but more generally …, [plaintiff] should be allowed to make inquiries related to records relating to that business strategy without requirement of specific reference/linkage to the

Texas litigation." *See.* Dkt. 9 at 14 (quoting *In re: Subpoena to Stone Point Capital, LLC*, 2022 WL 3754816, at *1).[1]

Alliant's raid giving rise to the Missouri Action was the latest execution of a carefully crafted pattern and practice that Alliant has executed across the country. Lockton is entitled to discovery related to that pattern and practice. The documents are relevant for a whole host of reasons and are critical to proving that Alliant acted knowingly and intentionally in its latest raid.

**B. Stone Point Fails to Establish Undue Burden.**

Lockton's motion explained that any burden imposed on Stone Point is proportional to the needs of the Missouri Action, which is a significant case with (at least) tens of millions of dollars at issue. *See* Dkt. 9 at 15-19. Stone Point's arguments to the contrary are wrong and should be rejected.

To start, Stone Point bears the burden to establish the discovery is unduly burdensome. *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019). And that burden cannot be met by speculation and conjecture. Stone Point must offer evidentiary proof that the burden would be undue. *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *10 (S.D.N.Y. June 19, 2019) (denying motion to quash where subpoenaed party did "not come forward with *solid evidence* that responding to the … Subpoena will subject it to unreasonable costs.") (emphasis added); *In re Cnty. of Orange*, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997) ("The mere assertion that a subpoena is burdensome, without *evidence* to prove the claim, cannot form the basis for an 'undue burden' finding.") (emphasis added). Stone Point must provide evidence of "the manner and extent of the burden and the probable negative consequences of insisting on

[1] Stone Point also notes that the Connecticut court ordered the plaintiff to bear some of the costs associated with its production. For the reasons explained in Section IV, a similar order is not warranted here.

compliance"—"inconvenience alone" is not enough. *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005).

Stone Point doesn't attempt to meet its evidentiary burden. Stone Point ***still refuses to even run the requested searches*** and inform the Court of how many documents are at issue, incredibly asserting that the number of hits generated by the searches is "irrelevant." Dkt. 22 at 18. As a result, this Court has no idea what the actual burden of compliance would be. While Stone Point says it would cost $46,000 to collect the emails,[2] that doesn't establish undue burden. For example, in *Amphenol*, 2019 WL 2521300, at *10, the court rejected Amphenol's burden argument where the company complained that it spent "months collecting and producing over 37,000 documents, and has further incurred additional legal fees having to respond to … multiple requests, meet and confers, improper deficiency notices, and now *thirteen* total subpoenas *and* a motion to compel." As the court held, "this data, in the Court's experience, is not indicative of an unreasonable burden, given the nature of the allegations here and Amphenol's alleged role" in the facts at issue. *Id.* The same is true here. Given the critical nature of the documents sought and the gravity of this litigation, even a far more significant burden to Stone Point would be proportional.

Stone Point's refusal to run the searches and provide the Court with substantiated statements about its actual burden should end this Court's inquiry. And it's clear why Stone Point has not provided this information. The actual burden is proportional, and Stone Point's true argument is it should have to incur *no burden* at all, because Lockton can obtain relevant

[2] The accuracy of this figure is highly questionable. Although Lockton's counsel pointed out that its vendors would charge less than $5,000 for this collection, Stone Point's counsel didn't provide any support for this dollar figure. *See* Falconer Decl., Ex. A. Instead, Stone Point's counsel speculated—without running searches—that the searches would likely yield 20,000-30,000 documents (albeit prior to de-duplication). Once again, Lockton's counsel questioned the dubious nature of this estimate, pointing out that "when Stone Point was compelled to run similar searches in 2022, Stone Point represented to the Court that the hit count was only about 2,300 documents." *Id.* Stone Point's counsel declined to offer any explanation for this disconnect.

documents from Alliant. *See* Dkt. 22 at 14-18. Lockton's motion explained why this argument fails: (1) many of the documents Lockton seeks would be uniquely within Stone Point's possession, and (2) that there may be duplication between Alliant and Stone Point's productions does not render the subpoena improper. Dkt. 9 at 16-19.

Stone Point doesn't refute that it possesses unique documents. It says Alliant would have possession of Board materials, Dkt. 22 at 17, but fails to acknowledge that the two Stone Point directors—with Stone Point email domains—undoubtedly communicated about those Board materials and meetings, both with each other and with other Stone Point personnel. Dkt. 9 at 16-17. Similarly, Stone Point doesn't refute that it possesses analyses of the leveraged hire strategy that Alliant wouldn't—it merely asserts that such analyses would be irrelevant. Dkt. 22 at 17-18.

As to Lockton's cited authority demonstrating that duplication between Alliant's documents and Stone Point's documents is not grounds to resist production, Stone Point argues that rule should only apply in situations where "there was reason to believe that parties to the underlying litigation may be abusing the discovery process." Dkt. 22 at 15. That argument fails on many levels. The cases make clear that the rule is not so limited. As Stone Point acknowledges, several of the cases didn't involve discovery abuses. *See id.* at 16. Moreover, Lockton has a legitimate basis to test the completeness of Alliant's productions in the Missouri Action, not the least of which is Alliant's documented history of discovery misconduct *perpetrated against Lockton*. *See* Dkt. 9, at 18. Stone Point's cases on this subject—almost all of which are from outside this circuit—are inapposite because they involve requests for irrelevant materials, third

parties that had *no* unique information whatsoever, or other proportionality issues not present here.[3]

At bottom, some duplication of party discovery is expected with third-party subpoenas—it can't be avoided. *See, e.g.*, *Saller v. QVC, Inc.*, 2016 WL 8716270, at *6 (E.D. Pa. June 24, 2016) (recognizing that "a subpoenaing party cannot practically 'frame its request to eliminate the possibility of duplication and ... ensure that it receives all of the documents it seeks from third parties.'"). That Alliant may also possess some documents doesn't preclude discovery from Stone Point.

## II. Documents Related to Lockton's Confidential Information.

Stone Point's arguments with respect to RFP 22 are puzzling. This request seeks documents related to Lockton's confidential information, and Lockton proposed a single, narrow search to identify responsive documents. Dkt. 9 at 19. Stone Point merely asserts that there "is no reason to think" it has responsive documents. Dkt. 22 at 19. But Lockton has good reason to believe otherwise, *see* Dkt. 9 at 19, and Stone Point's unsubstantiated denial is insufficient. This is not a

---

[3] *See Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024) (quashing deposition subpoena because plaintiff "ha[d] not adequately demonstrated that [witness] ha[d] relevant knowledge"); *Smarte Carte, Inc. v. Innovative Vending Sols., LLC*, 2024 WL 4024904, at *3 (D.N.J. Feb. 28, 2024) (party issuing subpoena "ha[d] not sufficiently demonstrated the relevance of each item of discovery sought"); *Rollstock, Inc. v. SupplyOne, Inc.*, 2022 WL 1443389, at *3 (E.D. Pa. May 6, 2022) (requesting party gave "no explanation" explaining why it needed documents from the non-party); *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017) (finding "the marginal relevance of the information sought" outweighed by "the risk of disclosure of Amherst's commercially sensitive competitive information"); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411 (C.D. Cal. 2014) (the value of the witness's testimony "appear[ed] to be low" and the topics of testimony were "*uniquely* obtainable" from a party) (emphasis added); *In re Subpoena to Apple Inc.*, 2014 WL 2798863, at *3 (N.D. Cal. June 19, 2014) (unlike here, the subpoenaing party "ha[d] not provided any reason why it cannot obtain the requested information from" the party); *Nalco Co. v. Turner Designs, Inc.*, 2014 WL 1311571, at *2 (N.D. Cal. Mar. 31, 2014) (subpoenaing party "ha[d] not explained why" it could not obtain all requested documents from the party and "ha[d] nowhere set forth its theory of relevance for these documents"); *Nicholas v. Poughkeepsie Sav. Bank/FSB*, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991) (limiting third-party discovery where it was of "minimal value" and there was a significant "risk of its misuse," by the plaintiff, who was not seeking the discovery for a proper purpose).

situation where Stone Point has, for example, "submitted a sworn declaration" that responsive documents do not exist. *Thomas v. New York City Health & Hosp. Corp.*, 2005 WL 3070901, at *1 (S.D.N.Y. Nov. 12, 2005). To the contrary, Stone Point refuses to even run the search to *determine* whether it possesses such documents.

Stone Point also asserts that "Lockton has failed to propound a narrowly tailored request" and that the "request is so vague and overbroad that Stone Point would not even know how to comply." Dkt. 22 at 20. This argument cannot be squared with the request itself or the fact that Lockton *told* Stone Point how to comply: run the single requested search. Once again, Stone Point's recent correspondence confirms it isn't taking a principled approach and is merely engaging in obstruction. Stone Point proposed narrowing the timeframe of the search to 2023-2024. *See* Falconer Decl., Ex. A at 3-4. ***Lockton agreed***. *Id.* Stone Point proposed changing the "AND" connector in the search to "w/10." *Id.* at 5. ***Lockton agreed***. *Id.* Stone Point proposed a way to deal with the irrelevant hits generated by the "Trident III" fund referenced in its opposition. *Id.* ***Lockton agreed***, noting it was "open to discussing additional ways" to deal with the issue. *Id.* And then, despite Lockton agreeing to every single one of Stone Point's proposals regarding this request, Stone Point said the parties are at an impasse and Lockton should file its reply brief. *Id.* at 1.

This is not a controversial request. A key step of the leveraged hire strategy is obtaining competitors' confidential information. Stone Point should produce any documents in its possession that reference or relate to Lockton's confidential information.

## III. <u>Stone Point's Privilege Log.</u>

Stone Point's arguments with respect to the privilege log miss the mark. It doesn't matter that the asserted privilege may be held by Alliant. The point is that any withheld documents should

be logged so that Lockton can assess the privilege claim. In any event, Stone Point recently committed that it "will issue a supplemental joint privilege log that includes any documents withheld or redacted for privileges belonging to Alliant, which were not covered by Alliant's … privilege log" being produced in the Missouri Action. *See* Falconer Decl., Ex. A at 4. Lockton agreed, as this approach addresses Lockton's concern that all documents are appropriately logged. *See* Dkt. 9 at 20-21. The Court should compel Stone Point to produce the privilege log as agreed.

## IV. Stone Point's Requests for Delay and Cost Shifting Should be Denied.

Stone Point's request to deny the motion as premature until Alliant completes its production should be rejected. The fact discovery deadline in the Missouri Action is mere months away. *See* Missouri Action Dkt. 139. Lockton doesn't have time to wait for Alliant to complete its production at an unknown date, analyze the production, engage in conferrals and potential motion practice, and exhaust all remedies, only to repeat that process with Stone Point. The subpoena to Stone Point was issued ***nearly a year ago***. It's time for Stone Point to comply.

Stone Point's request that Lockton pay its attorneys' fees and costs to comply also should be rejected. "In considering whether cost-shifting is warranted, courts consider (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *Loeb & Loeb LLP*, 2019 WL 2428704, at *5 (cleaned up). All three factors weigh in Lockton's favor. First, as Alliant's largest investor with two seats on Alliant's Board of Directors, Stone Point has a significant financial stake in the outcome of the case. Second, as a large private equity firm with significant resources, Stone Point can readily bear the costs of producing documents. Third, the litigation is of public importance. As the Delaware Chancery Court recently remarked when denying Alliant's motion to maintain the confidentiality of filings in that case: "Alliant is facing at least 41 lawsuits in at

least 25 jurisdictions in which competitors have asserted similar claims. There is plainly a level of public interest in the misconduct in which Alliant engaged." *See* Falconer Decl., Ex. B, ¶ 14.

## CONCLUSION

Lockton respectfully requests the Court enter an Order granting the Motion to Compel, awarding Lockton its attorneys' fees and costs, and ordering such further relief as the Court deems just and proper.

Dated: April 25, 2025
New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Russell H. Falconer*

Russell H. Falconer (*pro hac vice*)
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3170
Email: RFalconer@gibsondunn.com

-and-

RILEY SAFER HOLMES & CANCILA LLP

Eli Litoff (*pro hac vice forthcoming*)
One South Dearborn St., Suite 2200
Chicago, IL 60603
(312) 471-8780 (telephone)
elitoff@rshc-law.com

*Attorneys for Plaintiff Lockton Partners, LLC*

**ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)**

I, Russell H. Falconer, hereby certify that the attached document complies with the word count limit set forth in Local Rule 7.1(c), as it contains 3,439 words, excluding the caption, table of contents, table of authorities, and signature blocks. In preparing this certification, I have relied on the word count of the word processing system used to prepare the attachment.

Dated: April 25, 2025
New York, New York

By: */s/ Russell H. Falconer*